**DES MOINES REGISTER AND TRIBUNE COMPANY and A. Edward Heins, Appellants,**

v.

**Wilbur T. HILDRETH, Sheriff of Polk County, Iowa, Appellee.**

**No. 53855.**

Supreme Court of Iowa.

Nov. 10, 1970.

Robert G. Riley, of Duncan, Jones, Riley & Davis, and Hedo Zacherle, Des Moines, for appellants.

Ray A. Fenton, County Atty., and Ronald Kuntz, Asst. County Atty., Des Moines, for appellee.

REES, Justice.

This is an appeal from interlocutory ruling of the trial court ordering hearing on the trial of the cause be closed to the public. We conclude the trial court erred, and reverse.

Plaintiff Des Moines Register and Tribune Company is a corporation, and is a news medium engaged in the publication of a daily morning newspaper known as The Des Moines Register, a daily evening newspaper known as Des Moines Tribune, and a Sunday morning newspaper known as Des Moines Sunday Register. Plaintiff Heins is a resident of Polk County, employed as assistant managing editor for the plaintiff, Des Moines Register and Tribune Company. Defendant is the duly elected sheriff of Polk County, and as such is charged with the duty of issuing on proper application permits authorizing individuals to carry concealed weapons, in accordance with the provisions of Chapter 695 of the Code of Iowa, 1966. Section 695.16, Code, provides that the sheriff shall keep a record showing the names and addresses of all persons to whom such permits shall have been issued, together with the dates of issuance and expiration of the same, and defendant in his capacity as sheriff has issued such permits and maintains records of the same in his offices.

Pursuant to the provisions of Chapter 106 of the Acts of the Sixty-second General Assembly of Iowa, plaintiffs requested and demanded of defendant that they be permitted to examine the records of applications for and issuance of such permits to carry concealed weapons, and to copy the same for use in news articles in the newspapers published by plaintiffs, and were refused by the defendant the right to so examine and copy said records. Plaintiffs thereupon brought action for mandamus to obtain an order of the district court commanding the defendant to comply with the provisions of Chapter 106, Acts of the Sixty-second General Assembly, and to furnish to the plaintiffs for the purpose of inspecting and copying the list of persons to whom permits to carry concealed weapons had been issued by defendant. Plaintiffs assert in their petition for a writ of mandamus the action of the defendant sheriff is arbitrary, willful and unlawful, and no other remedy is available to the plaintiffs, and plaintiffs are sustaining and in the future will sustain damage by reason of the refusal of the sheriff to make the records available to them. Plaintiffs also allege the issuance of permits for the carrying of concealed weapons is a matter of public business, interest and concern to those members of the public who are subscribers

to the newspapers published by the plaintiffs, and that the proper performance of the duties of the defendant in his capacity as sheriff in the issuance of permits to carry concealed weapons and the keeping of the records of the issuance thereof is in the public interest, and by his refusal to permit the plaintiffs to examine the records and copy the same for such use as the plaintiffs might desire to make of them, the defendant has damaged and impeded the plaintiffs in the discharge of their duty and responsibility to the public to keep it informed as to the manner in which public business is conducted and in which elected officials are performing their legitimate and official duties. In the second division of their petition the plaintiffs sought declaratory judgment, incorporating in such second count all of the allegations of their petition as hereinabove recited, and asserting that a justiciable controversy exists between the parties concerning the refusal of the defendant to make available to the plaintiffs for examination and copying the records referred to, and concerning the meaning and interpretation of Chapter 106 of the Acts of the Sixty-second General Assembly. Plaintiffs thereupon sought judgment of the district court declaring and holding that the defendant had acted illegally and in violation of Chapter 106, and further declaring plaintiffs are entitled to examine and copy the records in defendant's possession with respect to the issuance of permits to carry concealed weapons, and to publish such records.

Defendant in his answer generally denied all of the allegations of the petition of the plaintiffs, except to admit plaintiffs had requested that they be permitted to examine and copy certain records and that he, the defendant, had refused to allow the plaintiffs to so examine and copy the same. In a second division and by way of affirmative defense to the petition of plaintiffs, defendant asserted that his refusal to permit and allow the plaintiffs to examine and copy applications of individuals for permits

to carry concealed weapons is pursuant to the provisions of Chapter 106, section 8, of the Acts of the Sixty-second General Assembly, for that such examination and copying would not be in the public interest and would substantially and irreparably injure the permit holders. The affirmative allegations of the defendant's answer were denied by the plaintiffs by way of reply, and thereafter the defendant filed his motion in which he prayed that the court order a closed hearing on the issues so developed by the pleadings of the parties, and further that the record of such hearing be sealed. Hearing was had on the motion, at which witnesses were called, sworn and examined, whereupon the court entered order that the hearing on trial on the merits of the controversy be closed. It is from this order the plaintiffs have obtained permission to perfect interlocutory appeal.

I. That the records involved here, namely, the applications for permits to carry concealed weapons and the record of the issuance of such permits are public records is not questioned. In fact, the trial court by ruling on a motion for more specific statement filed by plaintiffs in advance of their reply to the affirmative allegations of defendant's answer, found and adjudged the records referred to to be public records. Chapter 695, Code 1966, authorizes the sheriff of any county to issue a permit to a resident of his county only, limited to such time as should be designated in the permit, to carry concealed or otherwise a revolver, pistol, or pocket billy. The application is required to be in writing and is required to state the full name, residence, age, place and nature of the employment or business of the person to whom it is proposed to issue or grant the permit, and shall be signed by the person making the application. The sheriff is required by statute to issue a permit to go armed to all peace officers and such other persons who are residents of his county, and who, in the judgment of the sheriff, shall be permitted to go so armed. Permits issued to peace officers cease and expire when the employ-

ment of the holder as a peace officer terminates, and the sheriff is authorized at any time to revoke any permit issued by him. Section 695.16 obligates the sheriff to keep a record showing the names and addresses of all persons to whom permits shall have been issued, together with the dates of issuance and expiration of such permits. No statute having to do with the duty of the sheriff to issue permits or to keep records of the issuance of the same provides that such records shall not be available to anyone having a legitimate purpose in examining them. We conclude the ruling of the trial court that the records of the issuance of permits to carry concealed weapons are public records is correct. Indeed, this question is not before us here, and we make this observation preliminarily to the overall discussion of the case infra. The ultimate question as to whether or not the records shall be made available to the plaintiffs for the purpose of examining and copying them is not before us on this appeal, as we are concerned here only with the propriety of the court's order in declaring that hearing be closed and the record of hearing be sealed.

II. It is provided by statute that all judicial proceedings must be public, unless otherwise specially provided by statute or agreed upon by the parties. Section 605.-16, Code 1966. Clearly there is no agreement between the parties here that the proceedings be other than public, and we are unable to perceive any special statutory provision applicable to the trial of the issues in this case. Nor are we able to discern any basis upon which Section 605.16 is subject to any interpretation by the court as the statutory direction to conduct all judicial proceedings in public is mandatory and explicit except in those cases where exception is otherwise provided for.

In ruling on the motion of the defendant for a closed hearing and a sealing of the record, the trial court announced that it was the "feeling of the court that the court had inherent power to conduct proceedings in such a manner as it feels is for the best method of the administration of justice. I think we have an inherent power to do that. In view of the testimony in support of this motion, this will be a closed hearing; it will be so ordered." At the hearing on the motion for the entry of an order declaring the hearing to be closed to the public, and for a sealing of the record, five witnesses testified: an osteopathic physician, a minister of the gospel, a real estate salesman, a mechanical contractor, and an attorney. All testified they preferred not to be called as witnesses in a public hearing to admit they were holders of permits to carry concealed weapons. The physician testified it would be "detrimental to him" if he were required to testify at a public hearing. The minister testified it would be "detrimental to my position and my place in the community", and "to my work in the community, my position that I hold with my congregation." The real estate salesman testified, "(it) is my belief that certain persons, under certain circumstances, should be given the means of protecting themselves when there are no police or other methods of protection, and I wouldn't care to give this * * * to provide information as to what I have in my possession that I wish to protect." The contractor testified that he was reluctant to appear and testify in a public hearing as "I would not want my name published because the mere fact that I have a gun permit points out I would normally have a gun and this is just an open invitation to theft of the firearm." The attorney testified that he was reluctant to appear and give testimony in a public hearing "because I feel that by the very nature of the case itself there is an aura connected with a gun that, as a matter of private interpretation, can be reflected in either a detrimental way or a neutral way, as far as anyone that might be connected in any respect with it, either as a permit holder or for the purposes of carrying it or as merely a person that might own it. * * * I feel that aura connected with the gun itself would or could quite possibly reflect detrimentally on me in the opinion of other

people, my associates, my business associates."

The duty of a witness to give testimony has been aptly commented upon by Wigmore:

"For more than three centuries it has now been recognized as a fundamental maxim that the public (in the words sanctioned by Lord Hardwicke) has a right to every man's evidence. When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule." * * *

"(1) From the point of view of the duty here predicated, it emphasizes the sacrifice which is due from every member of the community. That sacrifice may take two forms, either of them serious enough:

"In the first place, it may be a sacrifice of time and labor, and thus of ease, of profits, of livelihood. This contribution is not to be regarded as a gratuity, or a courtesy, or an ill-required favor. It is a duty not to be grudged or evaded. Whoever is impelled to evade or to resent it should retire from the society of organized and civilized communities, and become a hermit. He who will live by society must let society live by him, when it requires to.

"Or the sacrifice may be of his privacy, of the knowledge which he would preferably keep to himself because of the disagreeable consequences of disclosure. This inconvenience which he may suffer, in consequence of his testimony, by way of enmity or disgrace or ridicule or other disfavoring action of fellow members of the community, is also a contribution which he makes in payment of his duties to society in its function of executing justice. If he cannot always obtain adequate solace from this reflection, he may at least recognize that it defines an unmistakable axiom. When the course of justice requires the investigation of the truth, no man has any knowledge that is rightly private. All that society can fairly be expected to concede is that it will not exact this knowledge when necessity does not demand it, or when the benefit gained by exacting it would in general be less valuable than the disadvantage caused; and the various privileges are merely attempts to define the situations in which, by experience, the exaction would be unnecessary or disadvantageous. The duty runs on throughout all, and does not abate; it is merely sometimes not insisted upon." Wigmore on Evidence, McNaughton Revision, Volume 8, § 2192, pp. 70–72.

■ It therefore is patently obvious that the wishes or desires of witnesses to testify or refrain from testifying have no place in the determination of a court to conduct a trial publicly or as a closed hearing.

■ Inherent right of a court to hear limited matters in camera or in a proper case to conduct a trial in private is not questioned by the plaintiff. We have examined the authorities cited by both plaintiff and defendant, and conclude that our problem is the application of Section 605.16 of the Code to the factual situation disclosed by the record. Closed hearings in the so-called "trade secret cases" are obviously necessary to achieve the ends of justice. The right of a court to exclude the public or given individuals for the purpose of preserving the decorum of the court is unquestioned, as is the right of a court to close hearings when a child may be called upon to testify to indecent or immoral matter. An excellent collection of authority touching upon the question of public trial is found in State v. Lawrence (Iowa, 1969), 167 N.W.2d 912. True it is the Lawrence case dealt with a criminal appeal, but the cases therein cited we find are applicable to the matter before us here. We therefore conclude the trial court's order for a closed hearing and the sealing of the record thereof must be reversed.

III. Defendant contends that public trial and the disclosure of the names of holders of permits to carry concealed weapons at trial will render the original issues moot. We see no reason proper protective orders should not be entered to limit public disclosure of the records involved until the ultimate issue is determined by the trial court after trial on the merits.

The cause is reversed and remanded.

Reversed and remanded.

All Justices concur.