**Renee HUDDLESON, Plaintiff,**

v.

**The CITY OF PUEBLO, COLORADO,
Defendant.**

Civil Action No. 09–cv–01589–PAB–BNB.

United States District Court,
D. Colorado.

Oct. 18, 2010.

Rosemary Orsini, Berenbaum Weinshienk,
PC, Denver, CO, for Plaintiff.

J. Andrew Nathan, Marni Nathan Kloster,
Nathan, Bremer, Dumm & Myers, PC, Denver, CO, for Defendant.

## ORDER

BOYD N. BOLAND, United States
Magistrate Judge.

This matter arises on **Defendant's Unopposed Motion to File Motion and Memorandum Brief In Support of Summary Judgment Under Seal** [Doc. # 36, filed 10/5/2010] (the "Motion to Seal"), which is DENIED.

Local rule of practice 7.2, D.C.COLO. LCivR, governs motions to seal. It provides in relevant part:

**A. Scope.** The court has a constitutional obligation to determine whether sealing a paper filed in a case or closing all or a portion of a court proceeding is warranted. On motion and an appropriate showing, a judicial officer may order:

1. that a paper filed in a case shall be sealed. . . .

**B. Judicial Enforcement of Stipulations to Seal.** A stipulated protective order or a confidentiality agreement executed by the parties, standing alone, will not suffice for sealing a paper or closing a court proceeding to the public, will not substitute for the showing required by D.C.COLO.LCivR 7.2C, and will not be binding on the court.

**C. Motion to Seal.** Any motion to seal or restrict public access shall address, at a minimum:

1. the nature of the material or the proceeding at issue;

2. the private interest that, when weighed against the qualified right or presumption of public access to court files and proceedings, warrants the relief sought;

3. the clearly defined and serious injury that would result if the relief sought is not granted; and

4. why a less restrictive alternative to the relief sought is not practicable or would not adequately protect the interest in

question (e.g., redaction, summarization, limited sealing of exhibits or portions of exhibits).

\* \* \*

**J. Effect of Denial of a Motion to Seal.** A paper filed under seal shall be deemed part of the public record if a motion to seal is denied, unless otherwise requested and ordered by the court, or subject to Fed. R.Civ.P. 72(a) concerning objections relating to non-dispositive matters.

The presumption of public access recognized and promoted by the local rule finds its root in the common law rights of access to judicial proceedings and to inspect judicial records—rights which are "beyond dispute." *Publicker Industries, Inc. v. Cohen,* 733 F.2d 1059, 1067 (3d Cir.1984). The reason for the presumption of open access to court proceedings is easily understood. "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Press–Enterprise Co. v. Superior Court,* 464 U.S. 501, 509, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984). The public has a fundamental interest in understanding the disputes presented to and decided by the courts, so as to assure that they are run fairly and that judges act honestly. *Crystal Grower's Corp. v. Dobbins,* 616 F.2d 458, 461 (10th Cir.1980).

The court in *Publicker,* and other circuit courts of appeal, have gone beyond the undoubted common law right, however, and have found a constitutionally protected right, rooted in the First Amendment, to public access to civil trials: [1]

> A presumption of openness inheres in civil trials as in criminal trials. . . . [T]he civil trial, like the criminal trial, plays a particularly significant role in the functioning of the judicial process and the government as a whole. . . . [P]ublic access to civil trials enhances the quality and safeguards the integrity of the factfinding process. It fosters an appearance of fairness, and heightens public respect for the judicial process. It permits the public to partici-

pate in and serve as a check upon the judicial process—an essential component in our structure of self-government. Public access to civil trials, no less than criminal trials, plays an important role in the participation and the free discussion of governmental affairs. Therefore, we hold that the First Amendment embraces a right of access to civil trials to ensure that this constitutionally protected discussion of governmental affairs is an informed one.

*Publicker,* 733 F.2d at 1070 (internal quotations and citations omitted). *Accord Westmoreland v. Columbia Broadcasting System, Inc.,* 752 F.2d 16, 23 (2d Cir.1984)(stating "we agree with the Third Circuit in *Publicker Industries* that the First Amendment does secure to the public and to the press a right of access to civil proceedings")(internal citation omitted); *Brown & Williamson Tobacco Corp. v. FTC,* 710 F.2d 1165, 1177 (6th Cir. 1983)(in a civil case, holding that "the First Amendment and the common law . . . limit judicial discretion" to seal court documents); *In re Continental Illinois Securities Litigation,* 732 F.2d 1302, 1308 (7th Cir.1984)(holding that "the policy reasons for granting public access to criminal proceedings apply to civil cases as well" and "relate to the public's right to monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system"). *See also United States v. McVeigh,* 119 F.3d 806, 811–12 (10th Cir.1997)(recognizing a common law right to access court documents); *United States v. Hickey,* 767 F.2d 705, 708 (10th Cir.1985)(same).

As the local rule of practice recognizes, however, the right to inspect and copy judicial records is not absolute. *Hickey,* 767 F.2d at 708. To the contrary:

> All courts have supervisory powers over their own records and files. Thus a court, in its discretion, may seal documents if the public's right of access is outweighed by competing interests.

\* \* \*

[B]ecause the analysis of the question of limiting access is necessarily fact-bound,

---

1. A public right to attend criminal trials rooted in the First Amendment is firmly established.

*Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 580, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980).

there can be no comprehensive formula for decisionmaking The decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case.

*Id.*

The Supreme Court in *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 598, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), discussed several exceptions to the general rule of open access to court files:

Access has been denied where court files might have become a vehicle for improper purposes. For example, the common-law right of inspection has bowed before the power of a court to insure that its records are not used to gratify private spite or promote public scandal through the publication of the painful and sometimes disgusting details of a divorce case. Similarly, courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption, or as sources of business information that might harm a litigant's competitive standing.

■ The paramount interest justifying limitations on the general rule of access is preservation of a party's right to a fair trial. *Gannett Co., Inc. v. DePasquale,* 443 U.S. 368, 376, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979)(noting that the right of the press to access a criminal trial must be "balanced against the constitutional right of defendants to a fair trial"); *United States v. McVeigh* 119 F.3d at 813 (upholding the trial court's order sealing evidence ruled to be inadmissible and stating that "disclosure of such evidence would play a negative role in the functioning of the criminal process, by exposing the public generally, as well as potential jurors, to incriminating evidence that the law has determined may not be used to support a conviction"). In addition, privacy interests have been found to be sufficiently compelling to overcome the presumption of openness. *See Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 32–36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)(noting that liberal pretrial discovery "may seriously implicate privacy interests of litigants and third parties" and holding that courts have broad discretion to issue protective orders to prevent abusive use of information obtained through the discovery process); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. at 600 n. 5, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980)(noting that the preservation of trade secrets and the protection of a youthful witness may justify closure of proceedings); and *In re Knoxville News–Sentinel Co., Inc.,* 723 F.2d 470, 476(6th Cir.1983)(upholding order preventing the public disclosure of bank records concerning non-party customers, included the customers' names, financial condition, business prospects, and other personal information).

The pending motion seeks to seal in its entirety the defendant's Motion for Summary Judgment, which is 21 pages in length, and voluminous accompanying exhibits, which total 197 pages. In support, the defendant argues:

3. A Stipulated Motion for Protective Order was filed with the Court on July 28, 2010 [Doc. No. 26] and the Protective Order was entered by Magistrate Judge Boland on August 5, 2010 [Doc. No. 29]. The Stipulated Protective Order allows parties to designate as "confidential" certain information produced and disclosed as part of this litigation. Any information designated as "confidential" is protected from public disclosure. Pursuant to the Stipulated Protective Order, if it is necessary for the parties to file "confidential" information with the Court as part of any motion, the "confidential" information should be filed under seal in accordance with D.C.Colo. LCivR 7.2.

4. The contemporaneously filed Defendant's Motion and Memorandum Brief in Support of Summary Judgment includes information subject to the Stipulated Protective Order and specifically documentation which has been deemed "confidential."

5. The "confidential" information is as follows: [identifying three of the 11 exhibits attached to Defendant's Motion for Summary Judgment] all contain information regarding third parties not involved in this litigation.

6. In addition to the Exhibits, the text of the Motion and Memorandum Brief specifi-

cally discusses "confidential" information regarding third parties, such as Franklyn Ortega, who are not involved in the lawsuit or parties to it, thus eliminating the option of simply requesting that only the above-referenced exhibits be filed under seal.

7. Sealing of the Defendant's Motion and Memorandum Brief in Support of Summary Judgment, along with its exhibits, is necessary to protect the privacy and trust of the third parties referred to. The Defendant believes the privacy rights of the third parties outweighs the presumption of public access. The third parties should not have personal information regarding them disclosed to the public in this lawsuit and could suffer injury by such disclosure. The Defendant is unaware of a less restrictive alternative that still protects third parties from the public disclosure of this information.

Motion to Seal [Doc. # 36] at ¶¶ 3–7.

This case involves allegations by a female police officer of gender based discrimination and retaliation in connection with her employment by the Pueblo Police Department. The proper functioning of a municipal police department is a matter of substantial public concern.

The "private" information which the defendant seeks to shield from public disclosure includes the following:

Exhibit A–8: A one page document, with substantial redactions, which identifies seven Pueblo police officers by name, including the plaintiff, and reports their test scores and rankings for purposes of promotion to sergeant;

Exhibit A–10: A three page document, captioned "Interview Committee Report," which records the committee's evaluation and appraisal of the six Pueblo police officers, including the plaintiff, for promotion to sergeant; and

Exhibit A–11: A one page, handwritten document which identifies four candidates, including the plaintiff, considered for promotion to sergeant. The document appears to compile and evaluate all criteria used in making the promotion decision.

Three male officers listed on the exhibits ultimately were promoted instead of the plaintiff. Those promotions form a central part of the plaintiff's claim of discrimination.

In addition to the three exhibits, the defendant also seeks to seal the text of the motion for summary judgment because it discusses "confidential" information regarding third parties, including the officers promoted over the plaintiff.

The existence of the blanket protective order, entered at the parties' request to facilitate discovery, does not alone justify sealing the motion for summary judgment and accompanying exhibits. D.C.COLO.LCivR 7.2B.

I have reviewed the materials identified by the defendant as containing personal information. Nothing in any of the materials is scandalous, libelous, or highly personal or sensitive in nature.

█ I disagree with the defendant that test results, interview appraisals, and the other criteria used in determining whether to promote a police officer to sergeant are "confidential" or that the officers have a privacy interest in that information. To the contrary, in *Denver Policemen's Protective Ass'n v. Lichtenstein*, 660 F.2d 432 (10th Cir.1981), the Tenth Circuit Court of Appeals defined the scope of constitutionally protected privacy rights under similar circumstances:

The Association contends that the officers and citizens who make statements in the course of an investigation have a right to privacy in the SIB [staff investigation bureau] files. The Association defines this right to privacy as a right to confidentiality. It is, specifically, a right to prevent disclosure of personal matters. The United States Supreme Court again identified this right in *Nixon v. Administrator of General Services*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 ..., wherein the Court said,

"We may agree with appellant that, at least when government intervention is at stake, public officials, including the President, are not wholly without constitutionally protected privacy rights **in *matters of***

*personal life unrelated to any acts done by them in their public capacity."*

*Id.* at 457, 97 S.Ct. 2777....

While the SIB files at issue here may have some personal data in them, the documents subject to Judge Lichtenstein's order did not contain personal data. Those documents related simply to the officers' work as police officers.

In *Martinelli [v. District Court,* 199 Colo. 163, 612 P.2d 1083, 1092 (Colo.1980) ], the Colorado Supreme Court recognized that personal data which is not of a highly personal or sensitive nature may not fall within the zone of confidentiality.

*Lichtenstein,* 660 F.2d at 435 (internal notes and citations omitted except as noted)(emphasis added).

Here, as in *Lichtenstein,* none of the information identified by the defendant is personal and wholly unrelated to any acts done by the officers in their public capacity. To the contrary, all of the materials relate to the officers' work as policemen and their attempts to obtain a promotion. That information is neither confidential nor private.

Proof that the individual officers have no expectation of privacy in the promotion information is demonstrated by the police department's use of that information to defend this lawsuit. The defendant points to the allegedly "private" information to attempt to demonstrate non-discriminatory bases for the questioned promotions. If the officers had individual privacy interests in the promotion information, the police department could not use it here to defend the department's conduct.

I have no doubt that the other officers considered for promotion would prefer not to have their test scores and interview rankings made public. However, the personal desire of witnesses to be protected against the disclosure of information relevant to judicial proceedings "cannot be accommodated by the courts without seriously undermining the tradition of an open justice system." *Brown & Williamson Tobacco Corp.,* 710 F.2d at 1180. *See Des Moines Register and Tribune Co. v. Hildreth,* 181 N.W.2d 216, 220 (1970)(holding that "[i]t is patently obvious that the wishes or desires of witnesses to testify or refrain from testifying have no place in the determination of a court to conduct a trial publicly or as a closed hearing").

The duty of a witness to testify publicly was aptly stated by Professor Wigmore in his treatise on evidence. First, "the public ... has a right to every man's evidence." 8 Wigmore, Evidence § 2192 (McNaughton rev.1961) at p. 70. Fulfilling that duty may, as here, result in a sacrifice which cannot be avoided:

> [T]he sacrifice may be of [the witness'] privacy, of the knowledge which he would preferably keep to himself because of the disagreeable consequences of disclosure. This inconvenience which he may suffer, in consequence of his testimony, by way of enmity or disgrace or ridicule or other disfavoring action of fellow members of the community, is also a contribution which he makes in payment of his duties to society in its function of executing justice.... When the course of justice requires the investigation of the truth, no man has any knowledge that is rightly private. All that society can fairly be expected to concede is that it will not exact this knowledge when necessity does not demand it, or when the benefit gained by exacting it would in general be less valuable than the disadvantage caused....

*Id.* at p. 72.

Although the defendant recites that disclosure of the promotion information could result in injury to the non-party officers, it fails to identify or demonstrate the likelihood of any "clearly defined and serious injury that would result," as required by D.C.COLO. LCivR 7.2C(3) to justify sealing the motion and exhibits. *Accord Sibley v. Sprint Nextel Corp.,* 254 F.R.D. 662, 667 (D.Kan.2008)(holding that "a moving party must submit particular and specific facts, and not merely stereotyped and conclusory statements" to establish grounds limiting access)(internal quotation and citation omitted).

In addition, there are less restrictive alternatives, such as masking the names of the non-party officers and referring to them by initials or other code, which the defendant neither addresses nor attempts to utilize.

*Id.* (denying a request to seal and noting that "to parties do not demonstrate that redaction would be insufficient to protect any information which is legitimately confidential personal information").

IT IS ORDERED that:

(1) The Motion to Seal [Doc. # 36] is DENIED; and

(2) Pursuant to D.C.COLO.LCivR 7.2J, Defendant City of Pueblo's Motion and Memorandum Brief In Support of Summary Judgment and attached exhibits [Doc. # 37] shall remain sealed for 14 days to allow an objection to this Order to be filed. If an objection is filed on or before November 1, 2010, Defendant City of Pueblo's Motion and Memorandum Brief In Support of Summary Judgment and attached exhibits [Doc. # 37] shall remain sealed pending an order by the district judge. If no objection is filed on or before that date, Defendant City of Pueblo's Motion and Memorandum Brief In Support of Summary Judgment and attached exhibits [Doc. # 378] shall be unsealed on November 2, 2010, and deemed a part of the public record.